1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREAUNA L. TURNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. PALLARES, *et al.*,<br><br>　　　　　Defendants. | Case No.  1:21-cv-01721-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>ECF No. 20<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Treauna L. Turner ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on December 6, 2021.  Plaintiff's complaint was screened, and Plaintiff was directed to either file an amended complaint or notify the court she was willing to proceed on her cognizable claim. Plaintiff's first amended complaint, filed on September 21, 2022, is currently before the Court for screening. (ECF No. 20.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

1

or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the Central California Women's Facility ("CCWF"), in Chowchilla, California, where the events in the complaint are alleged to have occurred.  Plaintiff names the following defendants: (1) M. Pallares, Warden, CCWF, (2) Robert Mitchell, M.D., Medical C.E.O., CCWF, retired, (3) Barbara Showalter, physician, CCWF, (4) Kali Freeman, M.D., contracted pathologist, Yosemite Pathology Medical Group, Inc.

In claim 1, Plaintiff alleges a deliberate indifference to medical care, negligence and medical malpractice for a misdiagnosis and lack of adequate examination.

Plaintiff alleges that in 2014, she discovered a lump in her right breast about the size of a dime. Plaintiff reported her findings immediately to her prior physician, Ms. Louis, M.D.  Dr. Louis reported Plaintiff's finding to Dr. Louis' supervisor, the prior CEO of medical, Defendant Robert Mitchell, M.D.   Plaintiff was given a mammogram and ultrasound. Plaintiff alleges that she is disabled and cannot stand or walk and is confined to a wheelchair from two gun shots

wounds to her back.  The prison was not able to do an adequate breast examination and none of her tests were accurate because they did not have adequate ADA accommodations for the examination. One examination returned accurate in its findings. However Dr. Louis and Dr. Mitchell decided to use the inaccurate findings for a diagnosis. The lump continued to grow rapidly. Both Dr. Louis and Dr. Mitchell disregarded this and both were in full charge of the navigation of Plaintiff's medical care and procedures.[1] Plaintiff continued to complain to medical that the growth was growing rapidly.

In 2017, the lump in Plaintiff's right breast was so enlarged that Plaintiff's breast was totally disfigured and discolored, rash and patch were growing on the external part of her breast. Plaintiff was given Tac cream 5 mg for treatment, while the lump was growing rapidly.  "Dr. Showalter and Dr. Mitchell w[ere] the lead navigators of all of Plaintiff's medical care necessities but did the bare minimum."

Medical care was turned over to a new physician, Barbara Showalter on prison grounds while the growth was continuing to grow.  Dr. Showalter, M.D. acknowledged the growth in the right breast and sent Plaintiff to contracted pathologist Dr. Kali Freeman for a biopsy of the lump. Dr. Kali Freeman misdiagnosed Plaintiff with a breast disease of fibro adenomatous. Plaintiff was deprived of intervention, with no given recommendation for further or future follow ups, no monitoring, although Plaintiff kept complaining that the lump was getting bigger.

Plaintiff alleges that it is a known fact that in many cancer cases, the breast disease Fibro adenomatous is the number 1 leading misdiagnosis when pathologists are screening for cancer and by refusing to place the patient at least with a recommendation to closely monitor the growth, she was at risk. When Plaintiff's request for a lumpectomy was denied, it lead to the spread of cancer cells through Plaintiff's body.  This could have been prevented.

---

[1] Dr. Louis is not named as a defendant. Rule 10(a) of the Federal Rules of Civil Procedure requires that each defendant be named in the caption of the complaint. A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief...." *Mackey v. Price*, No. 1:20-CV-01813 BAM(PC), 2021 WL 1425239, at *1 (E.D. Cal. Apr. 15, 2021), report and recommendation adopted sub nom. *Mackey v. Gov't Claims Program*, No. 1:20-CV-01813 NONE BAM(PC), 2021 WL 2002969 (E.D. Cal. May 19, 2021).

Plaintiff alleges that in 2019, the lump in her right breast had grown so large that her right breast was twice the size and weight of her left breast. The lump in the right breast was the size of newborn baby's fist.  Dr. Showalter continued to tell Plaintiff it's all in Plaintiff's mind and continued to assure her that the growth was non-cancerous.  Dr. Showalter assured Plaintiff there was nothing to worry about and that Dr. Showalter is a cancer survivor and would know if the lump was cancerous. Dr. Showalter referred Plaintiff back to the 2014 breast examination when Plaintiff was misdiagnosed with fibro adenomatous.

Dr. Showalter went on various vacations and leaves and in-between her leaves in 2019, Physician Ms. Garica was doing rounds in the infirmary where Plaintiff and been incarcerated and housed.  Plaintiff asked Garica to examine the enlarged growth in Plaintiff's right breast for a second opinion. Physician Garica examined Plaintiff and "couldn't believe her eyes," and ordered a biopsy immediately. On July 5, 2019, Plaintiff was told that Plaintiff had stage 4 breast cancer (lobular invasive carcinoma).  Chemo treatments were denied by Defendant Showalter on Plaintiff' first request, despite the recommendation of Madera Cancer Center for emergency chemo treatment. Plaintiff was already at stage 4 when she had her first appointment with the Madera Cancer Center. Instead, Dr. Showalter overrode the recommendation for chemotherapy and sent Plaintiff out for an MRI.  But because Plaintiff has bullets in her back, MRI could have killed her because of the metal in Plaintiff's body. Dr. Showalter continued to deny and delay chemo treatments and the cancer continued to grow and spread.

Plaintiff submitted 602 appeals to get Showalter to submit an order for chemo treatments. Plaintiff alleges that Showalter falsified the date on the chemo order that she submitted as if she submitted was before the submission of my emergency appeal for chemo treatments. Dr. Showalter placed the order for chemo, after the delay, but refused to put the chemo as a high priority, which resulted in further delay of the chemo.  Plaintiff was on her death bed fighting stage 4 breast cancer, and she was dying slowly and was not able to file her civil complaint right away.

In claim 2, Plaintiff alleges that defendants were performing defense medicine and not what was medically necessary.  Plaintiff had monthly I.T.T. medical meetings with Dr. Mitchell

and whole medical team as Dr. Mitchell was the prime decision maker on behalf of Plaintiff's medical care and medical procedures. When Plaintiff continued to report the growth, he and his medical team would state to Plaintiff that it is mental and all in Plaintiff's mind. Dr. Mitchell and his medical team would sit around a table with him after meeting with Plaintiff after complaining of the lump in the right breast and discuss the alleged pursuit of how to navigate the monitoring of each new growth that Plaintiff reported. Yet nothing was done to stop the prevention of the spread of the cancer cells and removal of her breast when all that was needed was a lumpectomy in 2014.

In claim 2, Plaintiff alleges Warden Pallares is responsible for patients' rights and policies of healthcare to perform according to medical ethics and appropriate medical care and patient dignity. Instead, they refused to do minimal detection and the cancer was alleged to spread.

Plaintiff seeks compensatory and punitive damages.

### III. Discussion

#### A. Supervisor Liability

Insofar as Plaintiff is attempting to sue Defendant Pallares, or any defendant, based solely upon his supervisory role, Plaintiff may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must... demonstrate that his deprivation resulted from an official policy or custom established by a... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff alleges that Defendant Pallares was responsible for the medical care and patients' rights. Plaintiff has failed to allege facts to support that Defendant Pallares participated in or directed the violations, or knew of the violations and failed to act to prevent them. Plaintiff also has failed to plead facts showing that any policy was a moving force behind the alleged constitutional violations. *See Willard v. Cal. Dep't of Corr. & Rehab.,* No. 14-0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation."). *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (the director of the state health department has no liability, unless director personally participated in the taking of his property). Plaintiff has been unable to cure this deficiency.

### B. Deliberate Indifference to Medical Care

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately

6

indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d at 242, overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012)) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

As to the objective prong, Plaintiff has alleged a serious medical condition: a lump on her breast which turned into cancer. The Court now turns to the allegations that the Defendants'

response to the serious need was deliberately indifferent.

### Dr. Showalter and Dr. Mitchell

Generally, misdiagnosis is not an Eighth Amendment claim. However, here, Plaintiff alleges the Dr. Showalter blatantly ignored the symptoms/physical distortion of her breast as indicative of cancerous growth. In 2017, Plaintiff alleges that the lump had grown and was causing skin rash and patch on the exterior skin, and while reporting that the lump was rapidly growing, she was only given topical cream. Plaintiff alleges that in 2019, the lump in her right breast had grown so large that her right breast was twice the size and weight of her left breast. It does not appear that despite significant bodily alterations, Dr. Showalter chose any course of action other than to rely on her own personal experience. The inference of deliberate indifference also is bolstered by the allegation that Dr. Garica immediately knew Plaintiff was in significant risk when Dr. Garica examined Plaintiff. Thereafter, Dr. Showalter delayed appropriate treatment. Liberally construing the allegations of the complaint, Plaintiff has stated that the course of treatment Dr. Showalter chose was medically unacceptable under the circumstances and that Dr. Showalter chose this course in conscious disregard of an excessive risk to Plaintiff's health and delayed treatment of the serious condition. See *Snow*, 681 F.3d at 988 (the evidence in the record and inferences therefrom could allow a reasonable jury to "conclude that the decision of the nontreating, nonspecialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under all of the circumstances."); *Schumaker v. Ahmed*, No. 17-CV-03567-EMC, 2019 WL 1206486, at *8 (N.D. Cal. Mar. 14, 2019) (deny summary judgment for "the unthinking denial without medical reason by prison officials that could allow a jury to conclude that the prison officials had acted with deliberate indifference to that inmate's medical need.")

Plaintiff's allegations are similar as to Defendant Mitchell after 2017. Plaintiff alleges that she told Dr. Mitchell monthly that the lump in her breast was growing yet no further monitoring, treatment or testing was done. Liberally construing the allegations, Plaintiff states a cognizable claim against Defendant Mitchell for conduct during this time period.

///

Dr. Kali Freeman

Plaintiff alleges that Dr. Freeman was a contracted pathologist, employed at Yosemite Pathology Medical Group, Inc.

The term "person[s]" in § 1983 encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law—including local governmental entities. *See Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) (party charged with constitutional deprivation must be a governmental actor because "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong"). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

Plaintiff cannot assert a § 1983 claim against the private individual defendant, Kali Freeman, unless she can plausibly allege the defendant was acting under color of state law. The Supreme Court and the Ninth Circuit have recognized at least four tests that facilitate identification of state action. Namely, "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations*, 975 F.3d 742, 747 (2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)); *see Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021). Satisfaction of any of the tests is enough to find state action, provided no "countervailing" factor defeats a finding of state action. *Pasadena Republican Club*, 985 F.3d at 1167; *Rawson*, 975 F.3d at 747. Regardless of the test, the question is simply always whether a defendant has exercised power possessed and made possible because state law. *Pasadena Republican Club*, 985 F.3d at 1167.

Relevantly, physicians who contract with prisons to provide healthcare to inmates are state actors. *See, e.g.*, *West*, 487 U.S. at 51–54; *George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010). However, private doctors, nurses, and hospitals who have not assumed the State's obligation to provide medical care to inmates, are not state actors just because they provide one-off medical treatment to an inmate. *See, e.g.*, *West*, 487 U.S. at 51–54;*Calloway v.*

9

*Youssee*, No. 1:21-CV-01450 JLT BAM(PC), 2022 WL 1409838, at *7 (E.D. Cal. May 4, 2022), report and recommendation adopted, No. 1:21-CV-01450 JLT BAM(PC), 2022 WL 2193458 (E.D. Cal. June 17, 2022), as clarified on denial of reconsideration, No. 1:21-CV-01450 JLT BAM(PC), 2022 WL 2873090 (E.D. Cal. July 21, 2022); *Felix v. Casey*, No. 2:18-cv-3185-KJM-AC-P, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021); *Probst v. Adams Cty. Sheriff's Dep't*, No. 1:20-cv-00032-DCN, 2021 WL 1554064, at *3 (D. Idaho Apr. 19, 2021).

Liberally construing the allegations, the Court finds that Dr. Freeman is a state actor. Nonetheless, Plaintiff fails to state a cognizable claim. Plaintiff's sole interaction with Dr. Freeman was the biopsy in about 2014. Plaintiff's claim against Dr. Freeman is based upon a misdiagnosis of the underlying cause of the lump in Plaintiff's breast. Misdiagnosis alone is not a basis for a claim of deliberate medical indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). The mere negligence in diagnosis and treatment cannot state an Eighth Amendment claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### C. State Law Claims

Plaintiff purports to bring a state law claim for negligence and/or medical malpractice. The California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde),* 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007). The Government Claims Act requires exhaustion of Plaintiff's state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in her complaint. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208–09 (Cal. 2007).

Plaintiff has failed to state allegations that she complied with the Government Claims Act. However, Plaintiff attaches a completed Government Claim Form which was stamped "received" and apparently received by the Government Claims Program on January 13, 2020. Liberally

10

construing the allegations, Plaintiff alleges that she submitted a Government Claim Form. Plaintiff, however, has not alleged that her claim was rejected.  But considering the Government Claim Form requested payment of $7.3 million dollars, the Court can infer that the claim was rejected.

The Government Claim Form explains in substance that Plaintiff was claiming "malpractice/negligence/misdiagnosis" in the diagnosis and treatment of the lump in her breast and includes a brief description of what occurred regarding the lump in her breast.. "[A] claim filed in anticipation of litigation must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit." *Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899, 920 (2002), disapproved on other grounds by *DeVillers v. County of San Diego*, 156 Cal.App.4th 238 (2007). While the Government Claim Form does not delineate Defendant Showalter, Mitchell or Freeman, the form lists as the defendants: "State prison Central California Women Facility (snf) medical."  At the screening stage, the allegations appear to provide notice of her claims regarding Showalter and Mitchell. The Court liberally construes the notice as to Defendant Freeman. "[T]he court must ask whether sufficient information is disclosed on the face of the filed claim to reasonably enable to public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." *Loehr v. Ventura Cty. Cmty. Coll. Dist*., 147 Cal. App. 3d 1071, 1083 (1983).

**D.  Negligence (Medical Malpractice) State Law Claim**

Under California law, the elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) a duty to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) resulting loss or damage." *Johnson v. Superior Court*, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006); *Hanson v. Grode*, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (same).  "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." *Johnson*,

143 Cal.App.4th at 305 (internal citations omitted).

Liberally construing the allegations in the first amended complaint, Plaintiff states a negligence (medical malpractice) claim against Defendant Showalter, Mitchell and Freeman.

### IV.     Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's first amended complaint states cognizable claims against Defendant Barbara Showalter, M.D., CCWF, and against Defendant Robert Mitchell, M.D., Medical C.E.O., CCWF, retired, for deliberate indifference to medical care in violation of the Eighth Amendment for the time period identified above and against Defendants Barbara Showalter, Robert Mitchell and Kali Freeman, M.D., contracted pathologist, employed at Yosemite Pathology Medical Group, Inc. for negligence (medical malpractice). Plaintiff's first amended complaint fails to state any other cognizable claims for relief against any other defendants.

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed September 21, 2022, (ECF No. 20):

    a. Against Defendant Barbara Showalter, M.D., and Defendant Robert Mitchell, M.D., Medical C.E.O., CCWF, retired, for deliberate indifference to medical care in violation of the Eighth Amendment;

    b. Against Defendants Barbara Showalter, Robert Mitchell, and Kali Freeman, M.D., contracted pathologist, employed at Yosemite Pathology Medical Group, Inc. for negligence (medical malpractice); and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 30, 2022**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE

13